UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HORNBECK OFFSHORE TRANSPORTATION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES COAST GUARD, *et al.*, <br><br> Defendants. | Civil Action No. 04-1724 (CKK) |

**MEMORANDUM OPINION**
(March 20, 2006)

Plaintiff Hornbeck Offshore Transportation, LLC ("Hornbeck"), a limited liability company

which owns and operates oil transport vessels, brings this action against Defendants the United

States Coast Guard and the United States of America (collectively, "Defendants" or "the Agency")

alleging that (1) the Agency's assignment of a phase-out date under the Oil Pollution Act of 1990

("OPA 90"), Pub. L. 101-380, 104 Stat. 484 (1990), of January 1, 2005, rather than January 1,

2015, for its tank barge "ENERGY 8701" was contrary to law, arbitrary and capricious, and in

violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, *see* First Am.

Compl. ¶¶ 31-35 (Count I – Violation of APA), ¶¶ 36-40 (Count II – Violation of APA); and (2)

the Agency's failure to provide certain requested documents constituted a violation of the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552, *id.* ¶¶ 41-47 (Count III – Violation of FOIA), ¶¶ 48-

54 (Count IV – Violation of FOIA).  Currently before the Court is Defendants' Motion for

Summary Judgment as to Counts III and IV of Plaintiff's First Amended Complaint (Plaintiff's

FOIA claims), Plaintiff's Opposition and Cross-Motion for Summary Judgment on Counts III and

IV, and Defendants' Opposition and Reply Brief With Regard to Plaintiffs' FOIA Claims.

Upon a searching examination of the parties' filings, the attached exhibits and declarations, the relevant case law, and the entire record herein, the Court shall grant-in-part and deny-in-part Defendants' Motion for Summary Judgment and shall deny Plaintiff's Cross-Motion for Summary Judgment.  Specifically, the Court grants Defendants' Motion for Summary Judgment with respect to the adequacy of its search, and its withholdings/productions pursuant to FOIA Exemptions 4 and 6.  However, due to the identified problems with the Agency's *Vaughn* Index and accompanying affidavits with respect to the documents withheld pursuant to FOIA Exemption 5, *see infra*, the Court shall deny without prejudice Defendants' Motion for Summary Judgment with respect to its Exemption 5 withholdings.  The Court orders the Agency to submit a new *Vaughn* Index as to these documents with proper detailed document descriptions and reasons for withholding that illuminate the contents of the documents and the reasons for nondisclosure.

## I: BACKGROUND

A.      *Plaintiff's First FOIA Request – Count III*

During the internal agency review of Plaintiff's phase-out request but prior to a final agency determination, Samuel Giberga, Plaintiff's General Counsel, made a FOIA request to the Agency in a letter addressed to Lieutenant Commander Paul Arnett, United States Coast Guard ("USCG"), at Coast Guard Sector New York on or about April 8, 2004.  Defs.' Stmt. of Mat. Facts Not in Dispute ("Defs.' Stmt.") ¶ 1; Pl.'s Resp. to Defs.' Stmt. ("Pl.'s Resp.") ¶ 1 (not contesting).  On behalf of Plaintiff, Giberga requested a copy of the "following documents or documents containing the following information":

a.      All Certificates of Inspection for the tank vessels B-95 and B-105 (the "Vessels") owned and/or operated by Bouchard Marine for the years 1990-2004, inclusive;

b.      All documents that pertain to the determination of the OPA 90 phase-out

             dates for the Vessels;

c.         All documents that pertain to any requests by Bouchard for administrative or legal review of the OPA 90 phase-out dates for the Vessels;

d.         All documents in your agency's possession that contain correspondence between your agency or any other agency of the United States and Bouchard regarding the OPA 90 phase-out dates for the Vessels.

Defs.' Stmt. ¶ 2; Pl.'s Stmt. ¶ 2 (not contesting); *see also* Admin. R. at 64-65 (4/8/04 Giberga

FOIA Request).

      Upon receiving Plaintiff's FOIA request, Coast Guard Sector New York forwarded the

FOIA request to the Marine Safety Center in Washington, D.C.  Defs.' Stmt. ¶ 3; Pl.'s Stmt. ¶ 3 (not

contesting this fact).  The Agency forwarded the request to the Marine Safety Center because it

believed that the Marine Safety Center was the office most likely to have documents responsive to

the FOIA request because that is the office that dealt directly with the "OPA 90 phase out dates" for

the vessels at issue and corresponded directly with Bouchard regarding such issues.  Defs.' Stmt. ¶

3; Pl.'s Stmt. ¶ 3 (contesting the legal adequacy of this action and the subsequent search, but not the

fact thereof).  The Marine Safety Center then initiated a search of the material in its possession,

custody or control which it deemed responsive to Plaintiff's request.  Defs.' Stmt. ¶ 4; Pl.'s Stmt. ¶ 4

(pointing out that the search was confined to one Coast Guard office).  On May 25, 2004, after

completing the search for responsive materials at the Marine Safety Center, Commander Alan

Marsilio, USCG Marine Safety Center Executive Officer, provided Plaintiff with 25 fully releasable

pages of material, and 4 pages that included redacted material.  Defs.' Stmt. ¶ 4; Pl.'s Stmt. ¶ 4 (not

challenging this fact); *see also* Defs.' Opp'n & Reply, Ex. 2 at 3-4 (5/25/04 Agency Response);

Admin. R. at 69-70 (5/25/04 Agency Response).

According to the Agency, all of the redacted material on the 4 subject pages was personal and private information exempt from disclosure under FOIA Exemption 6.  Defs.' Stmt. ¶ 5; Decl. of Brian Judge, USCG Captain and Chief of the Office of Claims and Litigation, Coast Guard Headquarters ("Judge Decl.") ¶ 6; Pl.'s Stmt. ¶ 5 (contesting this legal conclusion).  The 4 redacted documents are identified as Documents #49, #50, #51, and #52 in the Agency's *Vaughn* Index which accompanies their Motion for Summary Judgment.  *Id.*  According to the Agency, the private information that was redacted was limited to the redaction of the names of junior Coast Guard personnel who had no decision-making authority with respect to the matters in issue in any of the records.  *Id.*  Commander Marsilio reached this conclusion by determining that the individual privacy interests in the subject information outweighed any general public interest in disclosure because the information redacted would result in a clearly unwarranted invasion of personal privacy, while shedding little or no light on how the Agency carried out its statutory duties.  *Id.*

Commander Marsilio's May 25, 2004 response also informed Plaintiff that 42 pages of material, otherwise responsive to its FOIA request, was being withheld in its entirety by the Agency.  Defs.' Stmt. ¶ 6; Judge Decl. ¶ 7; Pl.'s Stmt. ¶ 6 (not contesting this fact).  According to the Agency, 27 of the 42 pages were being withheld under FOIA Exemption 5 because the Agency determined that the materials were predecisional or intra-agency communications relating to the deliberative process; moreover, 2 of these 27 predecisional documents were also being withheld on an alternative basis under Exemption 5, as the Agency considered those documents attorney-client privilege materials.  Defs.' Stmt. ¶ 6; Judge Decl. ¶ 7; Pl.'s Stmt. ¶ 6 (contesting these legal conclusions and arguing that the Agency's May 25, 2004 response did not assert the attorney-client privilege regarding the 2 documents).  The Agency's May 25, 2004 response further noted that the other 15 documents, out of the 42 withheld, were being withheld pursuant to its determination that this

material constituted confidential commercial and/or financial information submitted to the Agency by a third party (i.e., Bouchard) and was therefore subject to FOIA Exemption 4.  Defs.' Stmt. ¶ 6; Judge Decl. ¶ 7; Pl.'s Stmt. ¶ 6 (contesting this legal conclusion).

On June 28, 2004, Giberga, on behalf of Plaintiffs, appealed the Marine Safety Center's decision to withhold the 27 pages of alleged predecisional, Exemption 5 material and the 15 pages of asserted confidential commercial, Exemption 4 information.  Defs.' Stmt. ¶ 7; Judge Decl. ¶ 8; Pl.'s Stmt. ¶ 7.  The Agency contends that Plaintiff failed to appeal its withholding of 4 documents pursuant to Exemption 6, while Plaintiff claims that its appeal encompassed such documents.  Defs.' Stmt. ¶ 7; Judge Decl. ¶ 8; Pl.'s Stmt. ¶ 7; *see also* Admin. R. at 67-68 (Plaintiff's 6/28/04 FOIA Appeal).  The Agency denied Plaintiff's appeal by letter on December 14, 2004.  Defs.' Stmt. ¶ 7; Judge Decl. ¶ 8; Pl.'s Stmt. ¶ 7 (not contesting this fact).

B.     *Plaintiff's Second FOIA Request – Count IV*

Following Plaintiff's First FOIA request, Plaintiff, through its present counsel Lawrence Kiern, made a second FOIA request on September 30, 2004 for "any Agency document concerning a request for assignment of a new OPA 90 phase-out date based on re-measurement of a vessel not involving any structural conversion of the vessel, e.g., [which] occurred in the instances involving the Bouchard barges B No. 95 and B No. 105."  Defs.' Stmt. ¶ 8; Judge Decl. ¶ 9; Pl.'s Stmt. ¶ 8 (not contesting this fact).  In its September 30, 2004 FOIA request, Kiern – on behalf of Plaintiff – stated that he did not seek production of any documents already provided in response to the April 8, 2004 FOIA request with respect to the two barges at issue.  Defs.' Stmt. ¶ 9; Judge Decl. ¶ 10; Pl.'s Stmt. ¶ 9 (not contesting this fact).

Once again, the Marine Safety Center conducted a search for responsive materials within its office under the reasoning that it was the office most likely to have possession of any responsive

materials or would be best able to locate responsive materials in other Coast Guard offices.  Defs.'

Stmt. ¶ 10; Judge Decl. ¶ 11; Pl.'s Stmt. ¶ 10 (contesting the adequacy of this search and noting that

apparently no other offices were searched).  The Agency responded to Plaintiff's September 30,

2004 FOIA request through a letter from Captain R.J. Petow, USCG, to Keirn dated December 16,

2004.  *Id.*  The Agency informed Plaintiff that it had located only 5 pages of additional material that

was responsive to the September 30, 2004 FOIA request.  Defs.' Stmt. ¶ 11; Judge Decl. ¶ 12; Pl.'s

Stmt. ¶ 11 (not contesting this fact).  Of the 5 new pages of material, 1 page was a letter dated

September 15, 2004 that had already been provided to Plaintiff in response to Plaintiff's appeal of

the Agency's decision regarding the OPA 90 phase-out dates for the barge at issue in this case,

ENERGY 8701.  *Id.*  The Agency determined that the other 4 pages should be withheld pursuant to

FOIA Exemption 5, under the theory that they are intra-agency communications that contain

predecisional discussions and/or advice from counsel regarding the OPA 90 phase-out dates for the

barges and Plaintiff's appeal of the Agency's decisions.  Defs.' Stmt. ¶ 11; Judge Decl. ¶ 12; Pl.'s

Stmt. ¶ 11 (contesting this legal conclusion).

On December 23, 2004, Plaintiff appealed the Agency's December 16, 2004 letter

withholding the documents.  *See* Pl.'s Cross-Mot. for Summ. J. at 3; Defs.' Reply (not contesting

this fact).  After the expiration of twenty days without a response to its appeal, Plaintiff amended its

Complaint in this action on January 25, 2005 to include the second FOIA request and appeal.  *See*

First Am. Compl. ¶¶ (Count IV – Violation of FOIA).  At present, both parties assert that summary

judgment should be awarded in their favor with respect to the two FOIA-related counts of Plaintiff's

First Amended Complaint – Counts III and IV.  Plaintiff claims that the Agency has failed to

conduct an adequate search for responsive documents, and that it has failed to meet its obligations in

light of relevant case law to specifically describe the documents in question and justify their

withholding pursuant to a FOIA Exemption.  *See generally* Pl.'s Cross-Mot. for Summ. J.  In

contrast, the Agency asserts that Plaintiff's FOIA request is an inappropriate attempt to skirt the

limitations of an APA action and expand discovery in this case; however, the Agency maintains that

its search was clearly reasonable and adequate, and that it properly applied FOIA's Exemptions

during its review and production to Plaintiff.  *See generally* Defs.' Mot. for Summ. J.; Defs.' Opp'n

& Reply.

## II: LEGAL STANDARDS

   *A.      Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

   A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the

"initial responsibility of informing the district court of the basis for [its] motion, and identifying

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of

material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his]

own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific

facts showing that there is a genuine issue for trial."  *Id*. at 324 (internal citations omitted).

   Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary

judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d

202  (1986).  To be material, the factual assertion must be capable of affecting the substantive

outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible

evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S.

Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505

(the court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If

the evidence is merely colorable, or is not sufficiently probative, summary judgment may be

granted."  *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted).  "Mere

allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper

motion for summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The

adverse party must do more than simply "show that there is some metaphysical doubt as to the

material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986).  Instead, while the movant bears the initial responsibility of

identifying those portions of the record that demonstrate the absence of a genuine issue of material

fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is

a *genuine issue for trial*.'"  *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in

original).

> B.     FOIA

Congress enacted FOIA for the purpose of introducing transparency to government

activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress

remained sensitive, however, to the need to achieve balance between this objective and the

vulnerability of "legitimate governmental and private interests [that] could be harmed by release of

certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975

F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C.

Cir. 1998).  Accordingly, FOIA provides nine exemptions pursuant to which an agency may

withhold requested information.  *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9).

The Court reviews an agency's refusal to disclose requested documents *de novo*.  *See* 5

U.S.C. § 552(a)(4)(B) (2000).  Generally, when summary judgment is requested in a FOIA matter,

the agency bears the burden of showing that a FOIA exemption applies.  *Smith v. Dep't of Justice,*

251 F.3d 1047, 1050 (D.C. Cir. 2001).  To satisfy this burden, the agency may provide a plaintiff

"with a *Vaughn* index, which must adequately describe each withheld document, state which

exemption the agency claims for each withheld document, and explain the exemption's relevance."

*Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v.*

*Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  In addition, the agency's accompanying affidavits or

declarations must describe "the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor evidence of agency bad faith."  *Military*

*Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits may be submitted by

an official who coordinated the search, and need not be from each individual who participated in the

search.  *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

There is no set formula for a *Vaughn* index; so long as the agency provides the Court with

materials providing a "reasonable basis to evaluate the claim of privilege," the precise form of the

agency's submission -- whether it be an index, a detailed declaration, or a narrative -- is immaterial.

*Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 173 (D.C. Cir. 1994) (internal citations

omitted).  While *Vaughn* indexes are generally discretionary, affidavits alone may not suffice once it

is established that records and documents are in a governmental agency's possession.  *Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 368 (11th Cir. 1993) (citing *Stephenson v. Fed. Bureau of Investigation*, 629 F.2d 1140, 1144-45 (5th Cir. 1980)).  Therefore, it is in a governmental agency's best interest to provide a *Vaughn* index when claiming privilege, should it seek to satisfy its disclosure burden.  Typically, *Vaughn* indexes are most useful in cases involving thousands of pages of documents, when only a sampling of the documents is practical.  When dealing with voluminous records, a court will sanction an index or agency declaration that describes only a representative sample of the total number of withheld documents.  *See Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991); *Meeropol v. Meese*, 790 F.2d 942, 956-57 (D.C. Cir. 1986); *Washington Post v. Dep't of Def.*, 766 F. Supp. 1, 15 (D.D.C. 1991).  The parties may determine the method for selecting the sample documents to be included in the index for they are in the best position to do so.  *See Washington Post*, 766 F. Supp. at 16.  The Court should only interfere with the parties determinations of privilege if and when necessary.  *Id.*

Courts must "accord substantial weight" to an agency's affidavit regarding FOIA exemptions.  5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting *Safecards Servs., Inc.*, 926 F.2d at 1200).  Indeed, since FOIA exemptions are narrowly construed, should an agency correctly show that the FOIA does not apply to withheld material, the Court's review of the agency's decision is limited to determining whether the agency abused its discretion.  *Mead Data Cent. Inc. v. Dep't of Air Force*, 566 F.2d 242, 259 (D.C. Cir. 1977).  Therefore, should an exemption correctly apply, an agency's justification for withholding information need not allude to a specific

injury.  *See id.* at 258-59 (permitting the agency to rely upon the explanation that disclosure "would impair the deliberative process . . . by impairing the free and frank exchange of ideas among [agency] personnel").

Moreover, the agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.  *Mead Data Cent. Inc.*, 566 F.2d at 261.  Any non-exempt information that is reasonably segregable from the requested records must be disclosed.  *Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996).  In addition, district courts are required to consider segregability issues even when the parties have not specifically raised such claims.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In opposing a motion for summary judgment, a plaintiff must offer more than conclusory statements.  *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham*, 813 F.2d at 1241).  Indeed, a plaintiff pursuing an action under FOIA must establish that either:  (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all non-exempt material in the requested documents.  *See Perry-Torres v. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 53 (D.D.C. 2004) (citing *Piper & Marbury, LLP v. U.S. Postal Serv.*, Civ. No. 99-2383, 2001 WL 214217, at *2 (D.D.C. Mar. 6, 2001)).

### III: DISCUSSION

Pursuant to Plaintiff's two FOIA requests, which were submitted on April 8, 2004 and September 30, 2004, the Agency produced certain documents in full, redacted other materials

11

produced, and withheld certain information and documents pursuant to FOIA Exemptions 4, 5, and

6.  In the context of Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for

Summary Judgment, currently at issue are:  (1) the adequacy of the Agency's search; and the

appropriateness of the Agency's withholding of material pursuant to (2) FOIA Exemption 4; (3)

FOIA Exemption 5; and (4) FOIA Exemption 6.  The Court shall review each of these issues in

turn.

> A.      *The Adequacy of the Agency's Search*

Plaintiff relies on three central arguments to support its contention that the Agency's

searches in response to its two FOIA requests were inadequate.  First, Plaintiff points out that

"[a]lthough the documents that were produced originated from multiple Coast Guard offices, it does

not appear from [Judge's] affidavit that other locations were searched."  Pl.'s Cross-Mot. for Summ.

J. at 8.  Second, Plaintiff emphasizes that Judge's Affidavit, which accompanies the Defendants'

Motion for Summary Judgment, "is devoid of any detail" in that "it does not identify which files

were searched; the type of search that was conducted; and if electronic, what search terms were

used."  *Id*.  Third, Plaintiff contends that "[t]he inadequacy of the Agency's search is demonstrated

by the absence of critical responsive documents that should have been located, but were neither

released nor listed in the *Vaughn* index."  *Id*. at 9.  Plaintiff identifies "eight key missing

documents" which the Agency's search allegedly failed to uncover, and stresses that these failings

highlight an overall failure by the Agency to meet its "burden of establishing that it has thoroughly

searched for the requested documents" in an adequate manner.  *Id*. at 8.

In determining the adequacy of a FOIA search, the Court is guided by principles of

reasonableness.  *Ogelsby*, 920 F.2d at 68.  "The Court employs a 'reasonableness' test to determine

the 'adequacy' of search methodology, consistent with the congressional intent tilting in favor of

disclosure." *Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal citations

omitted). As such, an agency's search need not be exhaustive, merely reasonable. *See W. Ctr. for*

*Journalism v. Internal Revenue Serv.*, 116 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing *Shaw v. Dep't of*

*State*, 559 F. Supp. 1053, 1057 (D.D.C. 1983)); *see also Judicial Watch v. Rossotti*, 285 F. Supp.

2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA

search is measured."). Indeed, "[a] search is not unreasonable simply because it fails to produce all

relevant material," and this Circuit has continually stressed that "[i]t would be unreasonable to

expect even the most exhaustive search to uncover every file." *Meeropol*, 790 F.2d at 952-53.

Accordingly, in examining the adequacy of an agency's search, the Court must not address "whether

there might exist additional documents possibly responsive to a request, but rather whether the

search for those documents was adequate." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C.

Cir. 1994) (citing *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

    To obtain summary judgment on the issue of the adequacy of the records search, an agency

must show "viewing the facts in the light most favorable to the requester, that . . . [it] has conducted

a 'search reasonably calculated to uncover relevant documents.'" *Id*. at 552 (quoting *Weisberg*, 745

F.2d at 1485). To meet its burden, the agency may submit affidavits or declarations that explain

both in reasonable detail and in a non-conclusory fashion the scope and method of the agency's

search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence,

such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.

*Id*. at 127. An agency must show that it made a "good faith effort to conduct a search for the

requested records, using methods which can be reasonably expected to produce the information

requested." *Ogelsby*, 920 F.2d at 68; *see also Campbell*, 164 F.3d at 27 (same). In doing so, the

agency need not search every record system; "[h]owever, the agency cannot limit its search to only

one record system if there are others that are likely to turn up the information requested." *Oglesby*,

920 F.2d at 68.  "At the very least," the agency is "required to explain in its affidavit that no other

record system was likely to produce responsive documents." *Id*.

When faced with Plaintiff's three arguments denigrating the adequacy of its search, the

Agency expanded the record vis-á-vis its efforts, providing more detail through the March 31, 2005

Declaration of Peter D. Eareckson, a GS-14 civilian employee of the USCG currently serving as the

Chief of the Tonnage Division, Marine Safety Center.  *See* Defs.' Reply & Opp'n, Ex. 1 (Eareckson

Decl.) ¶ 1.  Upon a consideration of Eareckson's Declaration in conjunction with Judge's Affidavit

and the relevant facts of this case, it is plain that the Agency's search was adequate and reasonable,

and that its supporting documentation was sufficiently detailed to illustrate the Agency's good faith

efforts and scope of its search.  Indeed, each of Plaintiff's three arguments prove to be without merit

in light of the entire record.

First, while Plaintiff focuses on the fact that the Agency apparently searched for responsive

documents in only one location, i.e., the Marine Safety Center in Washington, D.C., courts have

long held that an agency is not required to search every record system.  *See Oglesby*, 920 F.2d at

68; *Meeropol*, 790 F.2d at 952-53; *Perry*, 684 F.2d at 128; *see also Miller v. Dep't of State*, 779

F.2d 1378, 1384-85 (8th Cir. 1985); *Marks v. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).

However, the agency cannot limit its search to one record system if other systems are likely to turn

up requested information, and must explain in an affidavit why no other record system was likely to

produce responsive documents if the search was limited to one system.  *See Oglesby*, 920 F.2d at

68.  In this case, the Agency offers three viable justifications for its decision to limit the relevant

searches to the Marine Safety Center.  First, the Agency asserts, and Plaintiff does not dispute, that

"[t]he Marine Safety Center is the office most likely to have documents responsive to the FOIA request[s] because that office dealt directly with the 'OPA 90 phase out dates' for the vessels at issue and corresponded directly with Bouchard regarding such issues." Judge Decl. ¶ 4; *see also* Eareckson Decl. ¶ 1 ("The Marine Safety Center was the Coast Guard unit most directly involved with this issue and within the Marine Safety Center my division was the most involved with this issue."). Second, the Agency curtailed its search because, given the age of the documents in question, most of which are over five years old, even if other offices that were not responsible for these matters had responsive documents in miscellaneous files, those offices would likely purged the documents as a result of normal Coast Guard paperwork management practices. *See* Eareckson Decl. ¶ 5. Third, Plaintiff itself wrote to the Marine Safety Center and specifically requested the Marine Safety Center's "assistance in *expediting* the processing of this request as it is made in connection with the administrative appeal by our Company to your agency and *requires our immediate attention*." *See* Defs.' Mot. for Summ. J., Ex. 4 (*Vaughn* Index), Doc. #9 (4/30/04 Letter from Plaintiff to Marine Safety Center) (released) (emphasis added). Given the tenor of this request, the Agency's reasoning that "[f]or the Marine Safety Center to have spent extra time and effort searching for potentially responsive documents in offices unlikely to be in possession of responsive documents would have thwarted Hornbeck's express desire for expeditious processing of its request" appears sound. Taking these justifications into account, including the Agency's explicit rationale behind its belief that no other offices would have responsive material or could be searched within the necessary time frame, the Agency's decision to confine its search to the Marine Safety Center is plainly reasonable.

Second, Plaintiff's argument that the Agency's accompanying affidavits are lacking sufficient detail to make a showing of an adequate search is also without foundation. Plaintiff

suggests that the Agency's declarations are "devoid of any detail" in that they fail to "describ[e] in sufficient detail the type of search conducted, the search terms used, or which files were searched." Pl.'s Cross-Mot. for Summ. J. at 8.  With respect to Judge's Declaration, Plaintiff appears to have some basis for this assertion, as Judge's Declaration describes the extent of the search in this cursory manner:  "The Marine Safety Center initiated a search of all responsive material in the possession, custody or control of the Coast Guard."  Judge Decl. ¶ 5.  However, Eareckson's Declaration clearly corrects this failing in a sufficient manner.

According to Eareckson's representations, he checked the Tonnage Abstract Database for all references to "Bouchard," "B. NO. 105," "B. NO. 95," and other terms.  Eareckson Decl. ¶ 2.  The Tonnage Abstract Database, which consists of approximately 4,256 records, was developed and is maintained by the Tonnage Division "to store tonnage policy decisions, important outgoing correspondence, and miscellaneous useful information related to tonnage."  *Id.*  From the results he obtained from the database, Eareckson "then checked Tonnage Division correspondence files using the results" and "obtain[ed] a number of the responsive documents from the correspondence files." *Id.* ¶ 3.  Using data from a CD-ROM, Eareckson was then able to create an "old" e-mail Archive in Microsoft Outlook, such that he could "search[] old e-mail messages that had been purged from the computer system (and saved to the CD-ROM)."  *Id.* ¶ 4.  Eareckson then used "a combination of methods to try to track down old e-mail messages covered by the FOIA request," such as "using Outlook search functions for words like 'Bouchard,' 'B. NO. 105,' 'B. NO. 95,' etc, and manually locating e-mail to which" he had references to from the correspondence file or other sources.  *Id.* When Eareckson was unable to find a referenced document that he was trying to locate, but if another office within the Marine Safety Center was involved, he "helped the responsible staff engineer look for the record (including a search of vessel project folders), and then discussed the

matter with the responsible Division Chief in an effort to find the document." *Id.* ¶ 5.  Ultimately,

Eareckson "personally spent over twenty-two hours searching for responsive records and responding

to this FOIA request." *Id.* ¶ 10.

Accordingly, a review of the record indicates that the Agency has provided sufficient detail

in its accompanying affidavits to establish the extent and reasonableness of its search.  While

Judge's Declaration left much to be desired in the way of detail, Eareckson's Declaration clearly –

and in great detail – describes the type of search conducted, the search terms used, which files were

searched, how certain problems were circumvented, and the time and attention devoted to Plaintiff's

FOIA requests.  In doing so, the Eareckson Declaration has clearly met the requirements set out by

courts within this jurisdiction regarding the sufficiency of detail provided in an affidavit.  *See*

*Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 19 (D.D.C. 1998) (denying summary judgment

where the affidavit failed to "describe the type of search conducted, the search terms used, or which

files were searched"); *Steinberg*, 23 F.2d at 551-52 (summary judgment denied, as the description

of search was inadequate when it failed to "describe in any detail what records were searched, by

whom, and through what process"); *Oglesby*, 920 F.2d at 68 (affidavits should set forth search

terms and type of search performed, and aver that all files likely to contain material were searched).

As such, Plaintiff's argument regarding the (in)sufficiency of the detail provided regarding the

Agency's searches must fail.

Third, Plaintiff's argument that critical documents were withheld, thereby demonstrating the

inadequacy of the search, is undermined by the factual record.  As noted previously, this Circuit has

continually stressed that the existence of documents not produced, without more, is not

determinative of the overall adequacy of a search.  *See Nation Magazine, Washington Bureau v.*

*U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995); *Steinberg*, 23 F.3d at 551; *Meeropol*,

790 F.2d at 952-53; *Weisberg*, 745 F.2d at 1485.  As such, even assuming *arguendo* that accuracy

of Plaintiff's representation that eight "key" documents are "missing" from the search results

produced, such evidence – in light of the Agency's reasonable decision to confine its search to the

Marine Safety Center and the sheer breadth of its detailed search – would prove largely irrelevant.

 Moreover, the factual record shows that Plaintiff's claim of "missing" documents resulting

from the Agency's failings is inflated.  First, of the eight documents identified as "missing" in

Plaintiff's Cross-Motion for Summary Judgment, *see* Pl.'s Cross-Mot. for Summ. J. at 9-12, two of

those documents – Documents #1 and #5 – were listed in the *Vaughn* Index; Document #1, which

corresponds to Document #48 in the *Vaughn* Index, and Document #6, which corresponds to

Document #5 in the *Vaughn* Index, were both withheld pursuant to FOIA Exemption 4.  *See* Defs.'

Mot. for Summ. J., Ex. 4 (*Vaughn* Index), Doc. #5, Doc. #48.  Second, with respect to Plaintiff's

identified Documents #7 and #8, which were applications to the American Board of Shipping

("ABS") for measurement of the B. NO. 95 and B. NO. 105 barges, it is clear that the Agency's

search could not locate these documents because they were sent to ABS, not the Coast Guard.  To

the extent that the Agency may have learned information from these applications, it is plain that the

data was obtained via an e-mail that was released to Plaintiff.  *See id.* (Document #49) (11/16/99

Cost E-Mail to Eareckson).  Third, with respect to Plaintiff's identified Document #3, which is a

letter from Congressman Peter King, (1) this document is arguably not responsive to Plaintiff's

FOIA requests, as it is not correspondence to or from Bouchard, a determination of a phase-out date,

or a request for review of the barges' phase-out dates, *see* Pl.'s Cross-Mot. for Summ. J., 1 (King

Letter); and (2) Eareckson specifically visited the Coast Guard's Congressional and Governmental

Affairs Office to search for a signed copy of the Agency's response to the Congressman's letter, and

discovered that the file that would have contained both letters had been purged after three years, *see*

Eareckson Decl. ¶ 8.  This leaves three "missing" documents identified by Plaintiffs – # 2, #4, and

#6.  Eareckson recalls specifically searching for two of these documents, without success.  *Id.* ¶ 6.

Ultimately, "the adequacy of a FOIA search is generally determined not by the fruits of the

search, but by the appropriateness of the methods used to carry out the search."  *Iturralde v.*

*Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Steinberg*, 23 F.3d at

551).  The rationale behind this "reasonableness" test is that "particular documents may have been

accidentally lost or destroyed, or a reasonable and thorough search may have missed them."  *Id.*

(citing *Miller*, 779 F.2d at 1384-85; *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 353

(D.C. Cir. 1978)).  As such, "it is long settled that the failure of an agency to turn up one specific

document in its search does not alone render a search inadequate."  *Id.* (citing cases).  Here, there

are – at most – three documents identified by Plaintiff which could have reasonably been in its

possession that it failed to locate.  Such a minor failure, in light of the reasonable methods employed

by the Agency and the relative detail and scope of its search, is clearly not determinative.  Indeed,

this is not a case where the plaintiff has evidence that the documents might be in offices that the

Agency has not searched, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir.

1999), or where the Agency failed or refused to interview government officials for whom there was

strong evidence that they might have been helpful in finding the missing documents, *id.* at 327-28,

or where the Agency ignored indications in documents found in its initial search that there were

additional responsive documents elsewhere, *see Campbell*, 164 F.3d at 28.  Ultimately, the scope of

the Agency's search was reasonable, especially in light of its policies and the relevant time

constraints, and the affidavits produced by the Agency detailing the searches employed and

methodologies used are plainly sufficient.  In light of the overall reasonableness of the Agency's

searches, the few documents not located by the Agency do not affect the ultimate result.  As such,

the Court concludes that the Agency's searches were adequate, and met the exacting standards set

forth by relevant case law.  Given this conclusion, the Court shall grant Defendants' Motion for

Summary Judgment with respect to the issue of the adequacy of the search, and shall deny Plaintiff's

Cross-Motion for Summary Judgment on this issue.

   B.   *FOIA Exemption 4*

   FOIA Exemption 4 protects from disclosure "trade secrets and commercial or financial

information obtained from a person [that are] privileged and confidential."  5 U.S.C. § 552(b)(4).

Pursuant to this exemption, the Agency originally withheld in full 4 documents submitted by

Bouchard Transportation – one of Plaintiff's competitors in the shipping industry.  Specifically,

Documents #3, #5, #45, and #48 in the *Vaughn* Index were withheld pursuant to FOIA Exemption

4 under the theory that disclosure of the commercial documents would likely cause the submitter

(Bouchard) substantial competitive harm.  *See* Judge Decl. ¶ 16.  Document #3 is a one-page letter

from the Marine Safety Center to Bouchard, dated January 7, 1998, regarding Bouchard's waiver

request.  *See* Defs.' Mot. for Summ. J., Ex. 4 (*Vaughn* Index), Doc. #3.  Document #5 is a five-page

letter from the Agency to Bouchard dated October 7, 1998, relating to "wrt structural change" in

order to change the OPA 90 phase-out dates.  *Id.*, Doc. #5.  Document #45, a December 7, 1999

Bouchard letter regarding its appeal of the initial OPA 90 phase-out decision, was originally

withheld in full; however, concurrent with its Motion for Summary Judgment, the Agency released

two pages from this fourteen-page document.  *Id.*, Doc. #45.  Finally, Document #48 is a one-page

letter from Bouchard to RADM North dated November 1, 1999.  *Id.*, Doc. #48.

   Following Plaintiff's objections to the withholding in full or in part of these 4 documents,

*see* Pl.'s Cross-Mot. for Summ. J. at 29-31, the Agency announced that it is releasing Documents #3

and #5.  *See* Defs.' Opp'n & Reply at 11.  Moreover, the Agency further stressed that "[w]hile

Documents 45 and 48 were properly withheld under Exemption 4 because they involve confidential commercial and financial information voluntarily obtained by Bouchard, the Coast Guard is seeking authorization from Bouchard to release these documents despite their protection under FOIA." *Id.* Given that the Agency has produced all documents previously withheld pursuant to Exemption 4, or is seeking their release upon Bouchard's consent, any issues previously involving Documents #3, #5, #45, and #48 <u>and</u> FOIA Exemption 4 are now moot.

     *C.*      *FOIA Exemption 5*

     Exemption 5 of the Freedom of Information Act exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates into the FOIA all the ordinary civil discovery privileges. *See Schlefer v. United* States, 702 F.2d 233, 237 (D.C. Cir. 1983); *A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 146 (2d Cir. 1994). Accordingly, this exemption has been construed to incorporate the deliberative process privilege. *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149-50 (1975); *EPA v. Mink*, 410 U.S. 73, 88-89 (1973); *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc); *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). This exemption has also been read to incorporate the attorney work-product doctrine and the attorney-client privilege. *Schlefer*, 702 F.2d at 237; *A. Michael's Piano*, 18 F.3d at 146.

     In this case, the Agency withheld a total of 31 pages of documents pursuant to FOIA Exemption 5. *See* Defs.' Mot. for Summ. J. at 11. Documents #2, #4, #6, #11, #13-44, #46, and #47 were withheld as allegedly "predecisional" by the Agency. *See* Judge Decl. ¶ 15. Documents #13, #15, and #26 – in addition to being withheld as "predecisional" – were also withheld by the

Agency under the theory that they "are exempt from disclosure because the documents relate

directly to communications between the Marine Safety Center and Coast Guard attorneys for the

purposes of obtaining or communicating legal advice." *Id*.  According to Defendants, these 31

pages of documents constitute "all intra-agency memoranda, emails, or letters between and among

staff personnel that relate directly to the Coast Guard's predecisional deliberate process regarding

the OPA 90 phase out dates for the barges at issue in this case."  Defs.' Mot. for Summ. J. at 11

(citing Judge Decl. ¶¶ 7, 12, 15).  Plaintiff objects to the withholding of these 31 pages of

information, contending that the Agency has failed to satisfy its burden of establishing that the

attorney-client privilege, the attorney work-product doctrine, or the deliberative process privilege

apply.  Pl.'s Cross-Mot. for Summ. J. at 19-20.

      1.     Attorney-Client Privilege and Attorney Work-Product Doctrine

      The Agency has withheld 3 documents pursuant to the attorney-client privilege and the

attorney-work product doctrine, which are incorporated into FOIA Exemption 5.  These 3

documents are Documents #13, #15, and #26 in the Agency's *Vaughn* Index.  *See* Judge Decl. ¶ 15;

Defs.' Mot. for Summ. J., Ex. 4 (*Vaughn* Index).  Document #13 is a one-page document, identified

as "G-LMI notes 16-Sept-04" that was prepared by attorneys within the Coast Guard's Office of

Maritime and International Law, Office of the Judge Advocate General, at a time contemporaneous

with the Agency's denial of Plaintiff's administrative appeal that is the subject of Plaintiff's APA

action in this case.  *See* Defs.' Mot. for Summ. J., Ex. 4 (*Vaughn* Index), Doc. #13; Defs.' Opp'n &

Reply at 10.  Document #26 is one-page e-mail from Eareckson to Vachon, the Agency's attorney-

advisor, dated November 22, 1999 requesting legal advice regarding the administrative appeal by

Bouchard, while Document #15 is a one-page response e-mail dated December 20, 1999 from

Vachon to Eareckson at the Marine Safety Center providing the requested advice regarding

Bouchard.  *See* Defs.' Mot. for Summ. J., Ex. 4 (*Vaughn* Index), Doc. #15, Doc. #26; Defs.' Opp'n

& Reply at 11.

                i.     *Relevant Standards*

      The attorney work product doctrine protects "the files and the mental impressions of an

attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs,

mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in

anticipation of litigation.  *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S.Ct. 385, 393, 91 L.Ed.

451 (1947).  Although factual materials falling within the scope of attorney work product may

generally be discovered upon a showing of "substantial need" under Federal Rule of Civil Procedure

26(b)(3), under the FOIA Exemption 5 the test is whether information would routinely be disclosed

in private litigation to any party.  *A. Michael's Piano*, 18 F.3d at 146 (citing *Nat'l Labor Relations

Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 n.16, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)).  In

other words, the Court does not consider a particular litigant's need in a FOIA action, but the overall

right of the public to know.  *See Sterling Drug, Inc. v. Fed. Trade Comm'n*, 450 F.2d 698, 705

(D.C. Cir. 1971).

      Overall, the courts have taken a flexible approach with respect to the attorney work-product

doctrine.  *A. Michael's Piano*, 18 F.3d at 146.  The document need not be created when litigation

was a certainty, so long as it was created "with an eye towards litigation."  *Hickman*, 329 U.S. at

511, 67 S.Ct. 385.  Indeed, the work product privilege draws no distinction between materials that

are factual in nature and those that are deliberative.  *Martin v. Office of Special Counsel, MSPB*,

819 F.2d 1181, 1187 (D.C. Cir. 1987).  In some cases, purely factual documents may reveal an

attorney's thought process while materials traditionally characterized as deliberative may not.  *Id.*

With respect to the related attorney-client privilege, FOIA Exemption 5 protects materials that would normally fall under attorney-client privilege. *See Mead Data Central*, 566 F.2d at 252. This Circuit has held that the privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services. *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997). To prevail on its attorney-client privilege claim, therefore, an agency must establish that the information conveyed formed part of a confidential communication to or by an attorney in the course of a professional relationship. *See Mead Data Central*, 566 F.2d at 253.

Just as the deliberative process protection is designed to permit a free flow of information to agency decision makers, the extension of the protection to attorney-client communications is "to ensure that a client receives the best possible legal advice based on a full and frank discussion with his attorney." *Id*. The *Mead Data Central* court held that the attorney-client privilege should be extended under FOIA Exemption 5 to an agency's communication with its lawyers. *Id*. This privilege extends to any communication between the client and counsel regarding a "legal matter for which the client has sought professional advice." *Id*.; *see also Schlefer*, 702 F.2d at 245 (stating that this protection also extends to the advice rendered by the attorney based upon a privileged communication with an agency employee).

As such, FOIA Exemption 5 protects a broad range of communications between agency staff and their attorneys. *See Upjohn Co. v. United States*, 449 U.S. 383, 392-97, 101 S.Ct. 677 66 L.Ed.2d 584 (1981). The attorney-client privilege under Exemption 5 protects the communications of both agency decision-makers and lower echelon agency employees and their lawyers. *See id*. Because those agency employees who do not have the ultimate authority to determine policy still

24

might possess information that is useful to the agency's attorney, the Supreme Court has extended

FOIA protection to their communications with agency lawyers.  *See id.*  The *Upjohn* Court also

stated that Exemption 5 protects the specifics of attorney-client communications even when the

subject matter of the communications is already known to third parties.  *See id.* at 395-96.  Much

like the requirements for a privilege log in civil litigation, there are several requirements that must

be met in a *Vaughn* index if this Court is to uphold the non-disclosure of documents pursuant

Exemption 5 to the attorney-client privilege.  *See Dir. of the Office of Thrift Supervision v. Ernst &*

*Young*, 795 F. Supp. 7, 11 (D.D.C. 1992).  Importantly, among other things, a privilege log must

"state the subject matter, number of pages, author, date created, and identities of all persons to

whom the original or any copies of the documents were shown or provided."  *Id.*

> ii.     *Application*

Under these standards, it is clear that the Agency has met its burden to justify its withholding

of Document #13 pursuant to the attorney-work product doctrine, which has been incorporated into

FOIA Exemption 5.  As noted above, Document #13, identified as "G-LMI notes 15-Sept-04," is a

document prepared by attorneys within the Agency's Office of Maritime and International Law,

Office of the Judge Advocate General.  It is clear that Document #13 was prepared on September

15, 2004, contemporaneous with the denial of Plaintiff's administrative appeal and less than one

month before Plaintiff filed suit in this Court alleging that the Agency violated the APA when it

refused to reclassify the phase-out date for ENERGY 8701.  Despite these circumstances, Plaintiff

claims that the Agency has failed to justify this document under the attorney work-product doctrine

because it has not met its burden to show "that there was any expectation of litigation when the

withheld documents were drafted."  Pl.'s Cross-Mot. for Summ. J. at 20-21.

Such a claim is disingenuous, given that, at the time Document #13 was drafted by the Agency's attorneys, (1) Plaintiff had already made one FOIA request to the Agency, which had been denied-in-part, thereby increasing the likelihood of a FOIA-related lawsuit; (2) the Agency had already taken its final action in denying Plaintiff's administrative appeal and setting January 1, 2005 as the OPA 90 phase-out date for ENERGY 8701, thereby increasing the likelihood of an APA-related lawsuit; and (3) Plaintiff brought this lawsuit approximately three weeks after the creation of Document #13 by the Agency's counsel. While future litigation might not have been absolutely certain at the time this document was drafted, it was extremely probable that the document was created by the Agency's legal department "with an eye towards litigation." *See Hickman*, 329 U.S. at 511, 67 S.Ct. 385. Under the flexible attorney work-product standard, Plaintiff has not overcome the Agency's right to keep privileged material protected from disclosure, particularly where it was created with an eye towards *this* litigation and was drafted approximately three weeks before the filing of Plaintiff's Complaint.

With respect to Documents #26 and #15, it is much more difficult to make a finding that either/both the attorney-client privilege and attorney work-product doctrine apply. As detailed above, Documents #26 and #15 are one-page e-mail communications back and forth between Eareckson at the Marine Safety Center to Vachon, an attorney-advisor for the Agency, in November and December 1999 – i.e., during the period of Bouchard's administrative appeal. If it is demonstrated that the information shared between the attorney, Vachon, and the agency client, Eareckson, is confidential, the attorney-client privilege applies. *See Mead Data Cent., Inc.*, 566 F.2d at 253. However, the Court cannot assume confidentiality. *See id.* at 254. Here, the description of Documents #26 and #15 provided by the Agency, *see* Judge Decl. ¶ 15; Defs.' Opp'n & Reply at 11, "gives no indication as to the confidentiality of the information on which they are

based.  It simply states the subject, source, and recipient of the legal opinion rendered." *Mead Data*

*Cent., Inc.*, 566 F.2d at 253-54.  On its face, with no further detail provided by the Agency

regarding the communications between Eareckson and Vachon, it is impossible to determine if

confidential information was supplied with the expectation of secrecy that was not known or

disclosed to any third party.  *Id.* at 254.

Indeed, this Circuit has held on numerous occasions that when officials within an agency

(i.e., Eareckson) communicate information from third parties (i.e., Bouchard) to the agency's

counsel (i.e., Vachon) and ask for legal advice, the counsel's written responses containing "neutral,

objective analyses of agency regulations" are not privileged.  *See Coastal States Gas Corp.*, 617

F.2d at 863; *see also Tax Analysts*, 117 F.3d at 619-20; *Schlefer*, 702 F.2d at 235-36, 45.  As the

*Schlefer* court noted, "[t]he outsider's communications to the official do not contain any confidential

information *concerning the Agency*; when the official transmits the relevant facts to the Chief

Counsel, no new or confidential information *concerning the Agency* is imparted."  *Schlefer*, 702

F.2d at 245 (determining that the documents "do not fall within the scope of the attorney-client

privilege and are not within FOIA exemption 5").

The situation faced by the D.C. Circuit in *Schlefer*, *Coastal States Gas Corporation*, and

*Tax Analysts* may well be the situation faced by Plaintiff here with respect to Documents #26 and

#15, meaning that the documents could not properly be withheld under the attorney-client privilege.

However, the Court cannot make a conclusive determination in favor of either party on this issue

given the simple lack of detail, description, and specificity in the Judge Declaration and the

Agency's subsequent efforts.  Indeed, such a lack of specificity and detail also prevents the Court

from properly analyzing whether – at the very least – Document #15 (Vachon's response) could be

27

considered attorney-work product under the theory that specific claims had been identified that made

future litigation likely (even though it did not ensue because of the Agency's ultimate decision to

support Bouchard's request during the administrative appeal stage).  *See Coastal States Gas Corp.*,

617 F. 2d at 865 (simply requiring that litigation was "fairly foreseeable," not that it actually

occurred).  Based on the present record, the Court simply cannot determine whether truly

confidential information was exchanged or whether Eareckson simply relayed Bouchard's

arguments and requested a neutral analysis of Agency regulations; likewise, the Court cannot

determine whether Vachon's response was crafted "with an eye towards litigation."  As such, the

Court concludes that the Agency has not met its burden at this time to establish that Documents #26

and #15 are exempt under the attorney-client privilege or as attorney work-product.  However, since

both documents have also been withheld under the deliberative process privilege, *see* Judge Decl. ¶

15, the Court shall continue its analysis of these documents at a later stage in this Memorandum

Opinion.  *See infra* Section III(C)(2).

       2.    <u>Deliberative Process Privilege</u>

The Agency has withheld Documents #2, #4, #6, #11, #13-44, #46, and #47 "as pre-

decisional 'inter-agency or intra-agency memorandums or letters which would not be available by

law to a party other than an agency in litigation with the agency.'" Judge Decl. ¶ 15.  According to

the Agency, "[a]ll of the documents are intra-agency memoranda, emails, or letters between and

among staff personnel that relate directly to the Coast Guard's pre-decisional process regarding the

OPA 90 phase out dates for the barges at issue in this case."  *Id*.  The Agency claims that "[r]elease

of this information could cause public confusion resulting from disclosure of reasons and rationales

that were not in fact the grounds for the Coast Guard's action."  *Id*.  Plaintiff objects to the

withholding of these documents pursuant to the deliberative process privilege, claiming that the

Agency has failed to meet the threshold burden for establishing the privilege, has improperly asserted the exemption of post-decisional documents, and has asserted the exemption on non-deliberative documents.  *See* Pl.'s Cross-Mot. for Summ. J. at 23-29.

i.      *Standards*

Case law regarding the deliberative process privilege emphasizes that this exemption is based on the policy of facilitating a "frank exchange of ideas and opinions" within agencies in order to ensure that "the quality of administrative decisions" does not suffer.  *Dudman Commc'ns Corp. v. Dep't. of the Air Force,* 815 F.2d 1565, 1567 (D.C. Cir. 1987).  "Exemption five is intended to protect the deliberative process of government and not just deliberative material."  *Mead Data Cent.*, 566 F.2d at 256.  Courts have understood that federal agencies will function best if they are not forced to "operate in a fishbowl."  *Id.*  The privilege also helps "protect against premature disclosure of proposed policies before they have been finally formulated or adopted," and to "protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."  *Coastal States Gas Corp.*, 617 F. 2d at 866.  However, the disclosure goal of FOIA would be gutted if every intra- or inter-agency communication was protected by Exemption 5. "[T]he 'deliberative process' privilege must be construed as narrowly as is consistent with efficient government operation."  *Wolfe,* 839 F.2d at 773 (citation and internal quotation marks omitted).

For material to be protected from disclosure by the deliberative process privilege, it must be both predecisional and deliberative.  *See Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978).  In deciding whether a document is "deliberative," a court assesses whether "it reflects the give-and-take of the consultative process."  *Coastal States Gas Corp.*, 617 F. 2d at 866.  "The

exemption . . . covers recommendations, draft documents, proposals, suggestions, and other

subjective documents which reflect the personal opinions of the writer rather than the  policy of the

agency." *Id.*   A court also weighs "whether the document is recommendatory in nature or is a draft

of what will become a final document, and whether the document is deliberative in nature, weighing

the pros and cons of agency adoption of one viewpoint or another." *Id.*

It is clear that "predecisional memoranda prepared in order to assist an agency

decisionmaker in arriving at his decision . . . are exempt from disclosure [under Exemption 5],"

while "postdecisional memoranda setting forth the reasons for an agency decision already made   . . .

are not." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).  In

deciding whether a document is "predecisional," a court looks to "whether it was generated before

the adoption of an agency policy." *Coastal States Gas Corp.*, 617 F. 2d at 866.  "Communications

that occur after a policy has already been settled upon for example, a communication promulgating

or implementing an established policy, are not privileged." *Jordan*, 591 F.2d at 774.  "[E]ven if the

document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or

informally, as the agency position on an issue or is used by the agency in its dealings with the

public." *Coastal States Gas Corp.*, 617 F.2d at 866.

Courts have been willing to waive the deliberative process privilege for internal agency

documents only when those documents clearly were used as statements of final policy. *See, e.g.,*

*Sears, Roebuck & Co.*, 421 U.S. at 158 n. 25, 95 S.Ct. 1504 (noting "the possibility that the

decision reached in an Advice Memorandum may be overturned in an Appeals Memorandum . . .

does not affect its finality for our [FOIA review] purposes.  The decision reached in the Advice

Memorandum . . . has real operative effect . . .); *Tax Analysts*, 117 F.3d at 617 (finding that IRS

field service advice memoranda "are themselves statements of an agency's legal position and, as

such, cannot be viewed as predecisional.  Although [they] may precede the field office's decision in

a particular taxpayer's case, they do not precede the decision regarding the agency's legal

position."); *Jordan*, 591 F. 2d at 774 (finding that while the requested documents "may not be

absolutely binding on each Assistant, the guidelines do express the settled and established policy of

the U.S. Attorney's Office."); *Coastal States Gas Corp.*, 617 F.2d at 869 (finding that certain

documents that "were routinely used by agency staff as guidance in conducting their audits, and

were retained and referred to as precedent" did not qualify as predecisional); *Evans v. U.S. Office of*

*Personnel Mgmt.*, 276 F. Supp. 2d 34, 41 (D.D.C. 2003) (stating that because "the memo at issue

describes OPM's legal position in terms and under circumstances strongly suggestive of finality, the

agency may not claim deliberative process to shield its articulation of that position.").  This is

because

> [t]he purpose of the privilege for predecisional deliberations is to insure that a
> decisionmaker will receive the unimpeded advice of his associates.  The theory is that
> if advice is revealed, associates may be reluctant to be candid and frank. It follows that
> documents shielded by executive privilege remain privileged even after the decision to
> which they pertain may have been effected, since disclosure at any time could inhibit the
> free flow of advice, including analysis, reports, and expression of opinion within the
> agency.

*Federal Open Market Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 359-60, 99 S.Ct.

2800, 61 L.Ed.2d 587 (1979).

Moreover, a document that contains predecisional information on some matters but reflects

an established agency policy on other matters may be covered by Exemption 5.  FOIA's requirement

that a federal agency provide a requestor with any reasonably segregable information covers such a

scenario, permitting the agency to withhold a document as predecisional but provide information on

decided matters to the extent it can be segregated from the exempted material.  5 U.S.C. § 552(b).

"The focus of the FOIA is information, not documents, and an agency cannot justify withholding an

31

entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc.,* 566 F.2d at 260.

ii.   *Application*

Upon a review of the Agency's *Vaughn* Index and the Judge Declaration, it is clear that Agency provides no further information about the documents withheld pursuant to the deliberative process privilege other than (1) the amount of pages at issue; (2) the name of the sender and recipient; (3) the type of document at issue (i.e., letter, email, etc . . .); (4) the date that the document was drafted; and (5) the fact that FOIA Exemption 5 is claimed. *See* Judge Decl. ¶ 15; Defs.' Mot. for Summ. J., Ex. 4 (*Vaughn* Index).  Given the paltry level of detail about the actual content of these documents in the Agency's *Vaughn* Index and its accompanying affidavits, the Court is left with very little other than supposition and inference upon which to base its analysis of the Agency's deliberate process privilege claims.  Defendants' Motion for Summary Judgment essentially provides no further information, while Defendants' Opposition and Reply does provide some hint as to the content and scope of the withheld documents.  Apparently, "[o]f the thirty-nine documents for which the Coast Guard claimed protected under the deliberative process exemption, thirty-one are one page e-mails, three are two page e-mails, and one is a three-page e-mail."  Defs.' Opp'n & Reply at 8 n.22.  The Court is also informed in Defendants' Opposition and Reply that "[n]early all the documents" being withheld pursuant to the deliberative process privilege are "messages exchanged among and with the personnel of the Marine Safety Center, the office that decided Bouchard's appeal."  *Id*. at 8.  The Agency asserts that "[t]he very nature of these documents supports the determination that they are pre-decisional.  They precede the appeal decision.  They are short, making it difficult to segregate facts from opinions.  None were incorporated into the appeal

32

decision." *Id.*[1]

While the Agency might ultimately prove correct in its assessment that these documents are rightfully withheld pursuant to the deliberative process privilege incorporated into FOIA Exemption 5, the Court cannot make such a determination at this time.  As this Circuit stressed in *Safecard Services*, "in order to carry its burden, the agency must describe not only the contents of the document but also enough about its context, *viz.* the agency's decisionmaking process, to establish that it is a pre-decisional part thereof."  *Safecard Servs.*, 926 F.2d at 1204 (citing *Bristol-Myers Co. v. Fed. Trade Comm'n*, 598 F.2d 18, 28 n.20 (D.C. Cir. 1978); *King v. Internal Revenue Serv.*, 684 F.2d 517, 519 (7th Cir. 1982)).  "Specifically, the court needs to know whether the document explains, directly or by reference, the reason for the agency's decision."  *Id.* (citing *Bristol-Myers*, 598 F.2d at 24-28).

In *Safeguard Services*, the D.C. Circuit was faced with an agency that "provided very limited information about the nature of the deliberative process of which it says these documents are

---

[1] The Agency, as a preliminary matter, argues that "Plaintiff is not entitled to obtain the documents that the Coast Guard is withholding under exemption 5 as part of its APA action because judicial review under the APA is on the administrative record.  Plaintiff is not, therefore, entitled by its own admission to obtain these documents through the FOIA."  Defs.' Opp'n and Reply at 7-8.  The Agency is apparently correct in its theory that Plaintiff is attempting to use the FOIA process to supplement the Administrative Record to support its APA-related claims; Plaintiff itself admits that "[t]his FOIA case is about uncovering the truth of the Coast Guard's disparate treatment of vessels similarly situated to Plaintiff's vessel, and ultimately, the Coast Guard's treatment of Plaintiff's vessel."  Pl.'s Cross-Mot. for Summ. J. at 6.  While the Agency is possibly correct in questioning the ultimate efficacy of Plaintiff's FOIA efforts, given the long-established rule that in an APA action, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court," *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), such an issue is better left for another day when the Court addresses Plaintiff's APA claims.  However, the Agency has pointed to no case law suggesting that a party engaged in APA-related litigation with an agency cannot serve a FOIA request upon that agency.  Accordingly, the Court shall allow Plaintiff's to proceed with its FOIA claims, though these claims should certainly be treated as separate and distinct from Plaintiff's APA claims.

part." *Id*. For instance, the agency in that case provided a description in the *Vaughn* Index

identifying two documents in this manner:

> At this 1/24/78 meeting, the Commission discussed whether to file an injunctive
> action against Marc Howard and Howard Associates. At the conclusion of this
> discussion, the Commission reached a decision on this question. These minutes
> reflect the Enforcement attorney's recommendations to the Commission that are
> protected from disclosure by the deliberative process privilege.

*Id*. This description appears positively Dickensian compared to the sparse, Carver-esque

minimalism of the *Vaughn* Index and Judge Declaration in this case. *See, e.g.*, Defs.' Mot. for

Summ. J., Ex. 4 (*Vaughn* Index), Doc. #46 ("PDE Analysis of barges, 12/2/1999"), Doc. #47

("Eareckson e-mail to Cost, 12/6/1999"). Despite the presence of actual sentences with logically-

flowing content, the D.C. Circuit found this type of description to be fundamentally inadequate. *See*

*Safecard Servs.*, 926 F.2d at 1204 ("Without further information, it is impossible to know whether

the agency's claim of exemption exceeds the limits established" by previous precedent.). Rather, the

*Safecard Services* court stressed that the agency "needs to explain such matters as how decisions

like those in issue are reached; the role that staff discussion and memoranda play in such decisions;

the manner in which such decisions are memorialized and explained; and whether such decisions are

treated, in later agency decisionmaking, as precedents." *Id*.

   While this case is not perfectly analogous to *Safecard Services*, that decision does illustrate

the general paucity of detail provided by the Agency in this case. Importantly, the detail provided by

an agency must be sufficient to actually provide a "functional description of the documents."

*Oglesby*, 79 F.3d at 1184. The descriptions provided by the agency must adequately address

"whether the document is recommendatory in nature or is a draft of what will become a final

document, and whether the document is deliberative in nature, weighing the pros and cons of agency

adoption of one viewpoint or another." *Coastal States Gas Corp.*, 617 F.2d at 866. Here, the

Agency's descriptions of the documents for which it claims fall under the deliberative process

privilege do not provide a "functional description of the documents." Indeed, virtually all of "the

descriptions only provide a vague hint at the possible contents of the documents. This type of

description does not give the court or the requester the necessary functional description of the

documents at issue." *Campaign for Responsible Transplantation v. U.S. Food & Drug Admin.*,

219 F. Supp. 2d 106, 112 (D.D.C. 2002) (citing *Oglesby*, 79 F.3d at 1184). Based on the present

record, the Court does not have a clear indication of whether the Agency's claim of exemption falls

within permissible limits, as the Agency has provided no information in the *Vaughn* Index and Judge

Declaration, and only minimal information in its Opposition and Response, to describe the contents

of these withheld documents and their context – i.e., their part in the decision-making process

revolving around the 1999 Bouchard matter. As such, even more than was the case in *Safecard*

*Services*, it is simply impossible to know at this point whether the Agency's claim of deliberative

process privilege is accurate as to all cited documents, and the Agency has plainly failed to meet its

FOIA burden and the "additional burden" faced by an agency when the deliberative process is less

than clear. *See Safecard Servs.*, 926 F.2d at 1204; *Vaughn*, 523 F.2d at 1146.

However, Plaintiff has also not met its burden on summary judgment to establish that these

documents are not predecisional and deliberative, and therefore has failed to make a showing that

the asserted FOIA Exemption 5 documents must be released. For instance, Plaintiff claims that

certain documents – specifically, Documents #40, #38, #30, #32, #34, #25, #24, #22, #23, #17,

and #19 – cannot be "deliberative" in nature because these memoranda flow from junior officers to

their superiors. *See* Pl.'s Cross-Mot. for Summ. J. at 28-29. While Plaintiff is correct that generally

"[t]he identity of the parties to the memorandum is important," as "a document from a subordinate

to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made," *Coastal States Gas Corp.*, 617 F.2d at 868, three important points bear in mind.  First, given the Agency's failure to describe the documents in question in any detail, labeling them "non-deliberative" at this point would be as much of an unfounded stretch as finding them "exempt." Second, the mere fact that the communications flow from subordinates to senior officers is not determinative.  *See N. Dartmouth Props., Inc. v. Dep't of Hous. & Urban Dev.*, 984 F. Supp. 65, 70 (D. Mass. 1997) ("Conversation is, after all, a two-way street.  A superior would be willing to engage a subordinate in candid debate only if he knows that his opinion will also be protected by the 'deliberative process' privilege.").  Third, and finally, the more "senior" officer might actually play a more consultative, subordinate role to a more junior officer in some cases and on some issues, depending on the circumstance.  *See* Defs.' Opp'n & Reply at 8-9 (explaining why that was the case here).  A blanket assertion that all emails flowing from subordinates to their superior officers are "non-deliberative" is untenable, and without further information, the Court cannot make such a conclusion and order the release of the documents under FOIA.

Plaintiff also argues that Documents #2 and #4 cannot be predecisional because they pertain to waiver applications that contemplated physical alterations of the two Bouchard barges that never occurred.  *See* Pl.'s Cross-Mot. for Summ. J. at 27.  Plaintiff's theory is that because the barges were never physically altered, no such decision was made, and the documents cannot be predecisional.  *Id.* Once again, such a position is not legally tenable.  Here, Plaintiff does not dispute that these short e-mails, whatever their precise content, were exchanged while a decision on an application was pending.  Simply because the need was obviated and a final decision was never issued does not change the character of predecisional communications.  *See Sears, Robuck & Co.*, 421 U.S. at 151

36

n.18, 95 S.Ct. 1504.  Finally, Plaintiff contends that Documents #6 and #14, which are two copies

of the same note to file authored by Eareckson *after* the Bouchard appeal decision, cannot be

predecisional because they post-date the appeal decision.  *See* Pl.'s Cross-Mot. for Summ. J. at 26-

27.  Once again, the facts might not necessarily support Plaintiff's view.  Indeed, Eareckson, in his

Declaration, maintains that the note was produced at the request of CAPT Lanze, who made the

request "in December 1999 when the appeal decision was made," but Eareckson waited until June

2000 to actually draft the document because of his demanding workload.  Eareckson Decl. ¶ 9.  As

such, this may be a case where a document that is postdecisional in form, but predecisional in

content, may be properly covered by the deliberate process exemption.  *See N. Darmouth Props.*,

984 F. Supp. at 69.

Ultimately, neither party can meet their burden under a summary judgment motion to either

justify the release of the documents in question, or to establish their withholding pursuant to FOIA

Exemption 5 as being deliberative and predecisional.  Without a proper *Vaughn* Index as to these

FOIA Exemption 5 documents – #2, #4, #6, #11, #14-44, #46, and #47 – the requester (Plaintiff)

cannot argue effectively for disclosure and this Court cannot rule effectively.  *See King v. Dep't of*

*Justice*, 830 F.2d 210, 225 (D.C. Cir. 1987).[2]  Rather than rule on the basis of an inadequate

*Vaughn* Index, the Court orders the Agency to submit a new *Vaughn* Index as to these documents

with proper detailed document descriptions and reasons for withholding that illuminate the contents

of the documents and the reasons for nondisclosure.  *Id.* at 225-26; *Campaign for Responsible*

*Transplantation*, 219 F. Supp. 2d at 116.  While the Court understands that these requirements are

---

[2] Because the *Vaughn* Index and information provided is adequate as to Document #13, and
it is clear that Document #13 is properly withheld as attorney work-product, this Order shall not
apply to that document.

an administrative burden on the Agency, any lesser standard of compliance would not satisfy this

Circuit's requirements and FOIA's policy "in favor of the fullest possible disclosure of government

records." *Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603 F.2d 945, 949

(D.C. Cir. 1979).

      D.      *FOIA Exemption 6*

      Exemption 6 of the Freedom of Information Act exempts from disclosure "personnel and

medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 protects from disclosure all

information that "applies to a particular individual" in the absence of a public interest in disclosure.

*Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358

(1982). Courts have broadly interpreted the term "similar files" to include most information

applying to a particular individual. *Kidd v. United States Dep't of Justice*, 362 F. Supp. 2d 291,

296 (D.D.C. 2005). It is not the nature of the files in which the information was contained, but the

balance of public and private interests that determines the exemption's scope. *Washington Post*,

456 U.S. at 599-600, 102 S.Ct. 1957.

      The Agency withheld sections of 4 documents pursuant to FOIA Exemption 6 – i.e.,

Documents #49-52 in the Agency's *Vaughn* Index. *See* Judge Decl. ¶ 14. According to the

Agency, these documents "were redacted because they contain the names of junior Coast Guard

personnel who had no decision making authority with respect to any issues addressed in the records.

The personal privacy interests in this information outweighs the public's interest in disclosure

because this information would shed no light on how the Coast Guard carried out its statutory

duties." *Id.* In its Motion for Summary Judgment, the Agency claims that "the Court should

dismiss the complaint as to the redactions based on Exemption 6" because Plaintiff failed to exhaust

its administrative remedies with respect to the redactions under FOIA Exemption 6.  Defs.' Mot. for

Summ. J. at 9.

"Exhaustion of administrative remedies is generally required before filing suit in federal

court so that the agency has an opportunity to exercise its discretion and expertise on the matter and

to make a factual record to support its decision."  *Oglesby*, 920 F.2d at 61 (citation omitted).  While

the exhaustion requirement is not jurisdictional because FOIA does not unequivocally make it so,

*see Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), "as a

jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion'

and the 'particular administrative scheme' support such a bar," *id.* at 1259 (citing *Oglesby*, 920

F.3d at 61).  This Circuit has held that "FOIA's administrative scheme favors treating failure to

exhaust as a bar to judicial review" and that allowing parties to pursue judicial review under FOIA

would undercut the purposes of exhaustion.  *Id.* (finding that the plaintiff's failure to appeal "did not

and could not place the substance" of the redactions under Exemption 6 under administrative

review).  Accordingly, it has been repeatedly held within this jurisdiction that exhaustion of

administrative remedies is required before a party can seek judicial review of a FOIA-related

withholding.  *See, e.g.*, *Spannaus v. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987); *Dettman

v. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986); *Stebbins v. Nationwide Ins. Co.*, 757

F.2d 364, 366 (D.C. Cir. 1984).

The Court concludes that the Agency's exhaustion argument is persuasive for two reasons.

First, despite the fact that the Agency raised the exhaustion issue in both its Motion for Summary

Judgment, *see* Defs.' Mot. for Summ. J. at 8-9, and its Opposition and Reply, *see* Defs.' Opp'n &

Reply at 6, Plaintiff essentially failed to offer any argument in response in its Cross-Motion for

Summary Judgment.  *See generally* Pl.'s Cross-Mot. for Summ. J.  While Plaintiff states that it has

not waived its appeal with regard to FOIA Exemption 6 in its "Opposition to Defendants' Statement

of Material Facts Not in Dispute as to Count III and Count IV (FOIA Claims)," *see* Pl.'s Resp. ¶ 7,

it fails to address the Agency's specific arguments as to Exemption 6 in its actual Cross-Motion for

Summary Judgment and Opposition.  Moreover, Plaintiff never explains in any filing why the

redaction of the names of junior Coast Guard personnel, who had no substantive involvement in the

decision-making process, was improper.  Plaintiff never justifies its objection.  Accordingly, the

Court construes Plaintiff's failure to respond as a concession that the Agency's arguments on this

issue are meritorious; as such, the Court grants Defendant's Motion for Summary Judgment with

respect to its FOIA Exemption 6 withholdings.  *See, e.g.*, *Hopkins v. Women's Div. Gen. Bd. of*

*Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit

that when a plaintiff files an opposition to a motion to dismiss addressing only certain argument

raised by the defendant, a court may treat those arguments that the plaintiff failed to address as

conceded.") (citations omitted); *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002)

("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments

made by the moving party, the court may treat those arguments as conceded, even when the result is

dismissal of the entire case.") (citations omitted); *Day v. D.C. Dep't of Consumer & Regulatory*

*Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the

opposing party makes in a motion, the court may treat that argument as conceded.") (citations

omitted); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002) (noting that it is not the

"[C]ourt's role . . . to act as an advocate for the [parties] and construct legal arguments on [their]

behalf in order to counter those in the motion to dismiss") (citations omitted); *see also United States*

*v. Real Property Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45, 61-62 (D.D.C. 2003)

(discussing the fact that fail to address an argument equates to a concession of that argument under

the Local Civil Rules).

Second, upon an independent analysis of the evidence presented and relevant case law, the Court concludes that the Agency's exhaustion argument is meritorious. In this case, Plaintiff's General Counsel, Samuel Giberga, appealed the Agency's withholdings in a letter addressed to R.A. Nash, Captain in the USCG, in a letter dated June 28, 2004. *See* Admin. R. at 67-68 (Plaintiff's 6/28/04 FOIA Appeal). While the June 28, 2004 letter opens with an announcement that it "appeals your decision dated May 25, 2004 regarding the referenced FOIA request," the letter then states: (1) "We appeal your determination to withhold 27 pages under 5 U.S.C. § 552(b)(5) because they are 'predecisional,'" *id*. at 67; and (2) "We also appeal your determination to withhold 15 pages 'because they contain confidential commercial and/or financial information,'" *id*. However, nowhere does the letter explicitly or implicitly reference any redactions made pursuant to FOIA Exemption 6. Relying on the canon of interpretation "*expressio unius est exclusio alterius*" (the mention of one thing implies the exclusion of another), the Court finds it reasonable to believe that Plaintiff's specific mentioning of its appeal of the withholdings pursuant to FOIA Exemptions 4 and 5, but its disregard of materials withheld under FOIA Exemption 6, in its June 28, 2004 letter of appeal denotes that Plaintiff failed to exhaust its administrative remedies with respect to the Exemption 6 withholdings. Because Plaintiff has failed to meet its exhaustion requirements with respect to the FOIA Exemption 6 withholdings, a "condition precedent" to its appeal of those redactions in this Court, the Court concludes that it must grant Defendants' Motion for Summary Judgment with respect to the Exemption 6 withholdings, and must deny Plaintiff's Cross-Motion for Summary Judgment on this issue. *See Hidalgo*, 344 F.2d at 1259.

**IV: CONCLUSION**

For the reasons set forth above, the Court shall grant-in-part and deny-in-part Defendants'

Motion for Summary Judgment and shall deny Plaintiff's Cross-Motion for Summary Judgment.

Specifically, the Court grants Defendants' Motion for Summary Judgment with respect to the

adequacy of its search, and its withholdings/productions pursuant to FOIA Exemptions 4 and 6.

However, due to the identified problems with the Agency's *Vaughn* Index and accompanying

affidavits with respect to the documents withheld pursuant to FOIA Exemption 5, the Court shall

deny without prejudice Defendants' Motion for Summary Judgment with respect to its Exemption 5

withholdings.  The Court orders the Agency to submit a new *Vaughn* Index as to these documents

with proper detailed document descriptions and reasons for withholding that illuminate the contents

of the documents and the reasons for nondisclosure.  An appropriate Order accompanies this

Memorandum Opinion.


Date:   March 20, 2006


                                        _____/s/_____

                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge